**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **ANGELA WRIGHT**  ) | |
| **833 Saint Dunstans Road**  ) | |
| **Baltimore, MD 21212**  ) | |
| )  | |
| **Plaintiff,**  ) | |
| )  | |
| **v.**  )  | **Civil Action No.** |
| )  | |
| )  | **COMPLAINT & JURY DEMAND** |
| **JEFF SESSIONS,**  ) | |
| **Attorney General of the United States,**  ) | |
| **Department of Justice**  ) | |
| **950 Pennsylvania Avenue, NW**  ) | |
| **Washington, DC 20530**  ) | |
| **Defendant.**  ) | |

_____

Plaintiff, Angela Wright, by and through her undersigned counsel, complains as follows:

**<u>INTRODUCTION</u>**

1.      This is an action authorized and instituted pursuant to § 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16 for the Defendant's unlawful sexual harassment, sex discrimination, and retaliation against the Plaintiff.

2.      Plaintiff Angela Wright was a committed employee of the Defendant Agency, the United States Marshals Service ("USMS") at the District of Columbia Superior Court, ("DCSC"), as a Detention Enforcement Officer ("DEO") for over six years, serving from January 2010 to April 2016.

3.      Ms. Wright was a loyal, dedicated, conscientious employee, yet, over the course of six years, Ms. Wright's civil rights were violated.

4.      Ms. Wright was subjected to persistent sexual harassment and a hostile and retaliatory work environment, perpetuated by managerial agents at USMS.

5.      Specifically, in August 2010 and continuing, Ms. Wright's former supervisor, Responsible Management Official ("RMO") Eric Clark, subjected her to vulgar and sexually explicit language concerning Mr. Clark's sexual desires for Ms. Wright; unwarranted sexual advances; and unwanted sexually-oriented touching.

6.      In August 2010, RMO Clark asked Ms. Wright to come to his room to study and to have dinner with him.

7.      Since 2010 and continuing, Mr. Clark asked Ms. Wright for sexual favors, visited Ms. Wright's work post unnecessarily, and physically brushed up against Ms. Wright.

8.      Since 2010 and continuing, RMO Clark threatened to change Ms. Wright's work hours if she did not give in to his sexual advances.

9.      Since 2010 and continuing, RMO Clark commented to Agency management that Ms. Wright is not capable of performing her job, is frequently off work due to injury and should therefore be given secretarial duties.

10.     On June 13, 2012, Ms. Wright filed an administrative complaint with the EEOC alleging sexual harassment, sex discrimination, and hostile work environment against Eric Clark, Chiefs John Cyphers, Terry Fred and James Brooks.

11.     On June 13, 2012, RMO Clark attempted to have Ms. Wright placed on leave restriction by the Assistant Chief Deputy.

12.     On June 13, 2012 and continuing, Agency managers continually changed Ms. Wright's work assignments; told other USMS employees about Ms. Wright's performance evaluation rating; questioned USMS employees concerning Ms. Wright's whereabouts and

lunch breaks; discussed Ms. Wright's leave, worker's compensation injury and other personal business to or in front of other USMS employees; requested specific information concerning Ms. Wright's doctor appointments; and ordered Ms. Wright to be relieved from her post and enter the cellblock for a meeting although she was on light duty and had been instructed not to enter the cellblock for safety reasons.

13.     On November 8, 2012, Ms. Wright was informed that her work hours were changed. Ms. Wright was then informed on November 21, 2012 by the supervisory deputy that she was to report her arrival time, breaks, when she departed for and returned from the bathroom, as well as when she left for the day.

14.     Ms. Wright reported severe misconduct of management officials Chief James Brooks, Assistant Chief Terry Fred and Assistant Chief James Cyphers to Marshal Michael Hughes and Internal Affairs.

15.     After filing her EEO claims for sexual harassment, severe misconduct, retaliation and hostile work environment, Ms. Wright was placed on Temporary Duty ("TDY") while her claims were investigated.

16.     Ms. Wright was assigned TDY at U.S. District Court in Baltimore, and was not informed that she would be returning to duty at DCSC until eight months after being placed on TDY despite numerous efforts on Ms. Wright's part to obtain information about her placement.

17.     In April 2014, upon returning to duty at DCSC from TDY, Ms. Wright was assigned two supervisors, something that had never been done prior to her leaving for TDY.

18.     In April 2014, upon returning to duty at DCSC from TDY, Chief Deputy Charlotta Allen-Brown assigned Eric Clark as Ms. Wright's direct supervisor, despite Ms. Wright's prior EEO claims alleging sexual harassment by Mr. Clark.

19.     In April 2014, upon returning to duty at DCSC from TDY, Ms. Allen-Brown assigned Ms. Wright to an evening shift, despite Ms. Brown having never been previously assigned to an evening shift due to her family responsibilities and the number of female DEOs and female Deputies remaining consistent within the Agency; no efforts were made by Ms. Allen-Brown to assign a different female DEO or female Deputy to the evening shift in light of Ms. Wright's familial obligations.

20.     In addition to being retaliatory, Ms. Allen-Brown's refusal to reassign Ms. Wright to a day shift was in violation of the Master Agreement in place at the time of Ms. Wright's employment.

21.     Upon returning to duty at DCSC from TDY, Ms. Allen-Brown made unilateral decisions regarding Ms. Wright's shifts despite never taking the time to learn the circumstances of Ms. Wright's TDY, the nature of Ms. Wright's EEO claims, or her work history at DCSC. Ms. Allen-Brown admitted that she is not typically the person to make shift assignments, however, she still made these decisions regarding Ms. Wright's work schedule and supervisor assignments.

22.     Upon returning to duty at DCSC from TDY, Ms. Wright expressed to Ms. Allen-Brown that she feared facing retaliation at the hands of several members of management, yet Ms. Allen-Brown failed to escalate Ms. Wright's concerns up the chain of command and stated that she felt that there was "no need" to do so, despite the severity of Ms. Wright's claims.

23.     Ms. Allen-Brown assigned John Waters as Ms. Wright's supervisor, despite Ms. Allen-Brown's knowledge that Mr. Waters was named in Ms. Wright's 2012 sexual harassment EEO complaint and the fact that it is agency policy to take proper protocols and possibly make exceptions regarding supervisor assignments under such circumstances.

24.     On April 8, 2014, immediately after returning to duty at DCSC from TDY, Ms. Wright was issued a referral to the Employee Assistance Program ("EAP") from Mr. Waters, which stated that her enrollment in the program was mandatory, although the program is voluntary, enrollment cannot be compelled, and no other employee had been issued such a referral.

25.     Ms. Allen-Brown directed Mr. Waters to issue the mandatory EAP referral.

26.     Mr. Waters issued the EAP referral to Ms. Wright despite having no information or knowledge about Ms. Wright's personal life upon which to base such a referral.

27.     After reporting concerns regarding her safety to Ms. Allen-Brown in light of the sexual harassment and retaliation she experienced at DCSC, Ms. Wright was informed by Ms. Allen-Brown that she needed to "change [her] mindset" in order to "be a part of [the] team," and that she complained too much about the district.

28.     After learning of Ms. Wright's EEO complaints, Ms. Allen-Brown told Ms. Wright to stop complaining about management in the district.

29.     Ms. Allen-Brown failed to investigate Ms. Wright's hostile work environment claims, including an incident where management official Laura Tierney yelled at and pointed her finger in Ms. Wright's face in front of DEO Kimberly Farrell.

30.     Ms. Wright was denied two promotions by Ms. Allen-Brown, despite Ms. Allen-Brown's admission that Ms. Wright was qualified for the positions and the fact that Ms.

Wright was on the Internal Deputy US Marshal Promotion Certificate which gave her preference over all external candidates.

31.     Ms. Allen-Brown alleges Ms. Wright's non-selection was based on Ms. Allen-Brown's decision to hire based on veterans' preferences which is mere pretext for denying Ms. Wright the promotions.

32.     Ms. Allen-Brown has admitted referring to Ms. Wright's prior EEO activity in Ms. Wright's non-selection when she admitted that when Ms. Wright inquired about the available GS-9 Deputy U.S. Marshal promotion, Ms. Allen-Brown told Ms. Wright that she could not complain about the district and also expect to be considered for a promotion.

33.     Ms. Wright reported Ms. Allen-Brown's retaliatory actions to Marshal Michael Hughes but the actions were never corrected or addressed.

34.     In January 2015, Ms. Wright was stripped of her badge, firearm and credentials pursuant to a non-existent civil rights violation investigation, without further explanation or communication from the agency.

35.     Ms. Wright remained without her badge, firearm and credentials from January 2015 until she left the agency in April of 2016.

36.     When Ms. Wright resigned from the Agency in 2016, DCSC incorrectly coded Ms. Wright as "resigning" from federal service, effectively terminating her from government service, despite assurances from human resources representative Jaye Brown that the coding would be corrected. The incorrect coding caused difficulties in Ms. Wright's transfer of employment to another federal government agency.

37.     In order to cope during these difficult circumstances, Ms. Wright took medical absences through sick leave and annual leave and attended regular mental health and therapeutic sessions.

## JURISDICTION AND VENUE

38.     This Court has subject matter jurisdiction over this suit pursuant to 42 U.S.C. § 2000e-16(a) and (c), incorporating 42 U.S.C. § 2000e-5(f) (3), to redress and enjoin employment practices of the Defendant, which is subject to suit under 42 U.S.C. § 2000e-16(a) and (c).

39.     Venue is proper in the District of Columbia under 42 U.S.C. § 2000e-5(f) (3), incorporated in 42 U.S.C. § 2000e-16(d), because the events giving rise to the claims occurred in the District of Columbia, and because the relevant employment records are in the District of Columbia.

## PARTIES

40.     Plaintiff, Angela Wright ("Plaintiff"), was a female employee at the United States Marshals Service as a Detention Enforcement Officer ("DEO"), GS-7, assigned to the District of Columbia Superior Court ("DCSC"), District 7.

41.     Defendant, Jeff Sessions, is the Attorney General of the United States Department of Justice, and the United Stated Marshal Service is an agency within the United States Department of Justice.

## ADMINISTRATIVE PROCEEDINGS

42.     Concerning the matters alleged here, Ms. Wright filed a series of charges of discrimination and formal complaints, all of which were initiated more than 180 days prior to the filing of this complaint.

## INJURY TO PLAINTIFF

43.     As a result of Defendant's conduct, Ms. Wright has suffered, and will continue to suffer, irreparable loss and injury, including but not limited to, pain and suffering, physical injury and sickness, economic loss, humiliation, embarrassment, indignity, mental and emotional distress, and the deprivation of her rights to equal employment opportunity.

44.     Through the actions of Defendant's employees, agents, and/or representatives described above, Defendant acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

45.     As a result of the experiences Ms. Wright faced in her workplace, she currently sees a psychotherapist and psychiatrist on a monthly basis for medicine management and therapy.

## COUNT 1: VIOLATION OF TITLE VII-SEX DISCRIMINATION

46.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

47.     Title VII prohibits discrimination in employment on the basis of sex.

48.     Ms. Wright is a member of a protected class (female); she has been subjected to unwelcome behavior that was based on sex; and the harassment she experienced has affected a term, condition, or privilege of her employment.

49.     As a government agency, USMS must comply with Title VII.

50.     The foregoing actions by Defendant constitutes retaliation against and interference with Plaintiff because of her exercise and enjoyment of her rights to be free from unlawful and discriminatory employment practices, in violation of Title VII.

51.     As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to: humiliation, pain and suffering, emotional distress, medical costs and treatment, non-selection of employment, lost earnings, lost benefits, and other financial loss.

52.     By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, and compensatory damages in an amount to be determined by the jury or the court that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, in addition to prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

## COUNT 2: RETALIATION

53.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

54.     The foregoing actions by Defendant constitute retaliation against Plaintiff for opposing unlawful and discriminatory employment practices and/or for making a charge of unlawful and discriminatory employment practices, in violation of Title VII.

55.     The foregoing actions by Defendant constitute retaliation against and interference with Plaintiff because of her exercise and enjoyment of her rights to be free from unlawful and discriminatory employment practices, in violation of Title VII.

56.     The foregoing actions by Defendant constitute the encouragement of other persons to retaliate against, interfere with, intimidate, and discriminate against Plaintiff because of her opposition to unlawful and discriminatory employment practices and/or because she made a charge of unlawful and discriminatory employment practices, in violation of Title VII.

57.     As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to: humiliation, pain and suffering, emotional distress, medical costs and treatment, non-selection of employment, lost earnings, lost benefits, and other financial loss.

58.     By reason of Defendant's retaliation, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, and compensatory damages in an amount to be determined by the jury or the court that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, in addition to prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Angela Wright, respectfully prays that this Court grant her the following relief:

a.) Enter a declaratory judgment finding that the foregoing actions of Defendant violated Title VII.

b.) Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.) Award back pay, front pay, and compensatory damages in amounts that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress caused by the conduct of Defendant alleged herein;

d.) Award Plaintiff reasonable attorneys' fees and costs incurred in this action, including expert witness fees; and

e.) Order such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues in this case so triable.

Dated: June 6, 2017

**ANGELA WRIGHT**

By:     /s/ Raymond C. Fay
Raymond C. Fay
D.C. Bar No. 188649
Fay Law Group PLLC
1250 Connecticut Ave, NW, Suite 200
Washington, D.C. 20036
Tel: 202-263-4604
Fax: 202-261-3508
RFay@faylawdc.com

Jessica T. Ornsby
D.C. Bar No. 1020567
Fay Law Group PLLC
1250 Connecticut Ave, NW, Suite 200
Washington, D.C. 20036
Tel: 202-263-4604
Fax: 202-261-3508
JOrnsby@faylawdc.com

**ATTORNEYS FOR PLAINTIFF**