**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ANGELA WRIGHT,

   Plaintiff,

v.

MERRICK B. GARLAND, in his
official capacity as Attorney
General of the United States,
U.S. Department of Justice,[1]

   Defendant.

Civ. Action No. 17-1081
  (EGS/GMH)

<u>**MEMORANDUM OPINION**</u>

## I. Introduction

Plaintiff Angela Wright ("Ms. Wright") has sued Defendant Merrick B. Garland in his official capacity as Attorney General of the United States ("Defendant") under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq. See* Compl., ECF No. 1. She alleges sexual harassment, gender discrimination, and retaliation for engaging in protected Equal Employment Opportunity ("EEO") activity during her six years as a Detention

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Attorney General of the United States, Merrick B. Garland, is substituted as Defendant for the former Attorney General of the United States, William P. Barr. *See* Fed. R. Civ. P. 25(d).

Enforcement Officer with the U.S. Marshals Service ("Marshals Service" or "Agency") at the Department of Justice. *See id.*

Pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, *see* Def.'s Mot. Dismiss or, in Alternative, Summ. J., ECF No. 23; and Ms. Wright's request for discovery pursuant to Rule 56(d), *see* Pl.'s Opp'n Def.'s Mot. Dismiss, or, in Alternative, Summ. J., ECF No. 27 at 41-42.[2]

Magistrate Judge Harvey issued a Report and Recommendation ("R. & R.") recommending that this Court grant in part and deny in part Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. *See* R. & R., ECF No. 47 at 1. Magistrate Judge Harvey also recommended that this Court deny Ms. Wright's request for discovery pursuant to Rule 56(d) as moot. *See id.* at 2. Ms. Wright raises several objections to Magistrate Judge Harvey's R. & R. *See generally* Pl.'s Objs. Magistrate Judge's R. & R. ("Pl.'s Objs."), ECF No. 52.

Upon careful consideration of the R. & R., the objections and opposition thereto, the applicable law, and the entire record herein, the Court hereby **ADOPTS** Magistrate Judge Harvey's R. & R., *see* ECF No. 47; **GRANTS IN PART** and **DENIES IN PART**

---

[2] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, *see* ECF No. 23; and **DENIES** Ms. Wright's request for discovery pursuant to Rule 56(d), *see* ECF No. 27 at 41-42.

## II.  Background[3]

### A. Factual

Ms. Wright began working as a Detention Enforcement Officer with the Marshals Service on January 16, 2010. Def.'s Reply Counter-Statement of Disputed Facts ("SOMF"), ECF No. 45-1 ¶ 1. At that time, she was assigned to work at the District of Columbia Superior Court ("D.C. Superior Court"). *Id.* ¶ 2.

On June 13, 2012,[4] Ms. Wright filed a complaint (the "June 2012 EEO Claim") with the Office of Equal Employment Opportunity for the Marshals Service ("EEO"). *Id.* ¶ 3. She made allegations against the following individuals: Supervisory Detention Enforcement Officer Eric Clark ("Supervisory Officer Clark"), Supervisory Detention Enforcement Officer William Coleman ("Supervisory Officer Coleman"), Supervisory Deputy U.S. Marshal David Grogan ("Supervisory Deputy Grogan"), Supervisory Deputy U.S. Marshal John Waters ("Supervisory Deputy Waters"),

---

[3] The Background section closely tracks Magistrate Judge Harvey's R. & R. *See* R. & R., ECF No. 47 at 2-16.
[4] Although the complaint is dated May 1, 2012, it was not filed with the EEO Office until June 13, 2012. *See* ECF No. 23-4 at 2, 4.

Assistant Chief Deputy U.S. Marshal Terry Fred ("Assistant Chief Deputy Fred"), Assistant Chief Deputy U.S. Marshal James Cyphers ("Assistant Chief Deputy Cyphers"), and Chief Deputy U.S. Marshal James Brooks("Chief Deputy Brooks"). *See* ECF No. 23-4 at 2 (June 2012 EEO Claim).

The Agency accepted the following allegations and issues for further investigation:

> Whether [Ms. Wright] was discriminated against based on sex (female), disability (carpel tunnel syndrome) and parental status (single parent) and subjected to sexual harassment and a hostile work environment since May 1, 2012. Examples of the sexual harassment/hostile work environment include, but are not limited to the following:
>
> 1. [Supervisory Officer Clark] asked [Ms. Wright] for sexual favors, called and visited [her] work post, and physically brushed his body against [her];
> 2. [Supervisory Officer Clark] threatened to change [Ms. Wright]'s work hours if she did not give in to his sexual advances. [Ms. Wright] alleges her status as a single parent was a factor in this threat;
> 3. [Supervisory Officer Clark] commented to District management that [Ms. Wright] is not capable of performing her job and is frequently off from work due to injury, therefore, [she] should perform secretarial duties; and
> 4. On June 13, 2012, [Supervisory Officer Clark] attempted to have the Assistant Chief Deputy place [Ms. Wright] on leave restrictions.
> 5. Whether [Ms. Wright] was subjected to reprisal (for filing the instant complaint) and a hostile work environment since June 13, 2012, when district management officials:

> a) continually changed [her] work
> assignment;
> b) told other district employees
> about [her] performance evaluation
> rating;
> c) again requested [her] be placed
> on leave restriction;
> d) questioned district employees
> concerning [her] whereabouts and
> lunch breaks;
> e) discussed [her] leave, workman's
> compensation injury and other
> personal business to and/or in front
> of other district employees;
> f) requested specific information
> concerning [her] doctor
> appointments; and
> g) ordered [her] to be relieved from
> her post and enter the cellblock for
> meeting although [she] is on light
> duty and had been instructed not to
> enter the cellblock for safety
> reasons.

SOMF, ECF No. 45-1 ¶ 4 (quoting ECF No. 23-4 at 4-6 (September 2012 EEO Acceptance Letter)).

On January 25, 2013, Ms. Wright amended her June 2012 EEO Claim. *See* ECF No. 23-4 at 10 n.3 (2012 EEO Claim Investigation Report)). This amendment added two allegations to the EEO investigation:

> Whether [Ms. Wright] was subjected to reprisal
> (for filing the initial complaint) when:
> (a) On November 8, 2012, [Ms. Wright] was
> informed that her work hours were changed from
> 6:00 a.m. - 2:30 p.m. to 6:30 a.m. - 3:00 p.m.;
> and
> (b) On November 21, 2012, [Ms. Wright] was
> informed by the supervisory deputy that she
> has to report her arrival time, breaks, when
> she departs for and returns from the bathroom,
> as well as when she leaves for the day.

SOMF, ECF No. 45-1 ¶ 6 (citing ECF No. 23-4 at 10 (2012 EEO Claim Investigation Report)).

Following this investigation, Ms. Wright sought a hearing before an Administrative Judge on the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 7. On February 25, 2015, the EEOC held the requested hearing and heard testimony from Ms. Wright and various employees at the Marshals Service. *Id.* ¶¶ 7-8. The Administrative Judge issued his final decision on May 11, 2015, finding that Ms. Wright had failed to establish a claim of sexual harassment, discrimination, retaliation, or hostile work environment in violation of Title VII. *Id.* ¶ 9 (citing ECF No. 23-4 at 16-37 (May 2015 Decision)). The EEOC entered its final order accepting the Administrative Judge's decision and informing Ms. Wright of her appeal rights on June 15, 2015. *Id.* ¶¶ 11-12.

In August 2013, while the investigation concerning the June 2012 EEO Claim was pending, Ms. Wright was temporarily reassigned from the D.C. Superior Court to the U.S. District Court for the District of Columbia. *Id.* ¶ 36. She was then reassigned back to the D.C. Superior Court and moved to the evening shift in April 2014. *Id.* ¶¶ 37-39. Chief Deputy U.S. Marshal Charlotta Allen-Brown ("Chief Deputy Allen-Brown") assigned Ms. Wright to two supervisors: Supervisory Officer

Clark and Supervisory Deputy Waters. Compl., ECF No. 1 ¶¶ 17,
18, 23. Chief Deputy Allen-Brown instructed Assistant Chief
Deputy U.S. Marshal Todd Singleton ("Assistant Chief Deputy
Singleton") to refer Ms. Wright to the Marshals Service's
Employee Assistance Program ("EAP"). SOMF, ECF No. 45-1 ¶¶ 31-
32. Chief Deputy Allen-Brown testified that the Agency referred
Ms. Wright to the EAP because she was "very stressed out" over
being returned to D.C. Superior Court because people there "did
not like her," she had "family issues," and the transfer back
was "not in compliance with [an] alleged agreement that she had
previously entered with Headquarters senior management and the
Office of General Counsel." ECF No. 23-5 at 10. Supervisory
Deputy Waters issued a memorandum to Ms. Wright on April 8,
2014, stating that her "participation in the EAP program is
mandatory, not voluntary." *Id.* at 48. Chief Deputy Allen-Brown
and Assistant Chief Deputy Singleton later testified that the
EAP is voluntary and that neither intended the referral to be
mandatory. *See* SOMF, ECF No. 45-1 ¶¶ 33-35.

On April 28, 2014, Ms. Wright filed another complaint with
the Marshals Service's EEO Office (the "April 2014 EEO Claim").
*Id.* ¶ 13 (citing ECF No. 23-4 at 52). The Agency accepted the
following allegations for investigation:

> (a) In a memorandum dated April 8, 2014, [Ms.
> Wright] received notice that she had been

7

> referred to and directed to participate in the
> Employee Assistance Program;
> (b) On April 4, 2014, [Ms. Wright] learned
> that her detail to the U.S. District Court was
> ending that she was being returned to her duty
> station at the D.C. Superior Court and
> assigned to work the evening shift.

*Id.* ¶ 14 (citing ECF No. 23-4 at 54-55 (June 2014 EEO Letter)).

On June 30, 2014, Ms. Wright filed a third complaint with the Marshals Service's EEO Office (the "June 2014 EEO Claim"). *Id.* ¶ 15. She alleged discrimination based on race, retaliation, and a retaliatory hostile work environment. *Id.* ¶ 17. On October 28, 2014, the Agency accepted two incidents for investigation:

> (a) On May 27, 2014, [Ms. Wright] learned she
> was the only Detention Enforcement Officer
> required to report to two different
> supervisors.
> (b) On May 6, 2014, her supervisor addressed
> her in a hostile manner and stated she had
> been watching [Ms. Wright] for a couple hours.

*Id.* ¶¶ 15-16 (quoting ECF No. 23-6 at 4-5 (October 2014 EEO Letter)).

On August 4, 2014, Ms. Wright filed a fourth complaint with the Marshals Service's EEO Office (the "August 2014 EEO Claim"). *Id.* ¶ 18. The Agency accepted the following claim for investigation: "[w]hether [Ms. Wright] was subjected to reprisal discrimination . . . when, on July 18, 2014, she learned she was not to attend the August 2014 Basic Deputy United States Marshal [training]. . . . [Ms. Wright] further alleged her non-selection was a direct result of conversations she had in meetings with

her Chief Deputy" and "her previous EEO activity." ECF No. 23-4 at 59 (August 2014 EEO Letter).

The Agency consolidated the April 2014 EEO Claim, June 2014 EEO Claim, and August 2014 EEO Claim (the "Consolidated 2014 EEO Claim"). *Id.* ¶¶ 22-23.

Then, on December 26, 2014, Ms. Wright filed a fifth complaint (the "December 2014 EEO Claim"). *Id.* ¶ 25. The Agency determined it would investigate whether she "was subjected to reprisal (filed prior EEO complaints) when, on December 5, 2014, she learned she was not selected by her District for a slot in the upcoming class of candidates for the Deputy U.S. Marshal position (Vacancy Announcement Admit. 15 Number 11-001) scheduled to begin on January 21, 2015." *Id.* ¶ 26 (citing ECF No. 23-6 at 33 (February 2015 EEO Letter)).

While the EEO Office conducted its investigations, Ms. Wright "was engaged in a physical confrontation" with a prisoner on June 8, 2015 and, as required, reported using force greater than a minor restraint. *Id.* ¶ 58. The Marshals Service Internal Affairs Office conducted a review and closed the submission. *Id.*; ECF No. 35-2 at 33. On June 17, 2015, upon direction from the Office of Professional Responsibility, Assistant Chief Deputy U.S. Marshal Jacob Green placed Ms. Wright on limited duty and confiscated her credentials, badge, and firearm. SOMF, ECF No. 45-1 ¶¶ 60-61.

On July 30, 2015, Ms. Wright filed a sixth complaint (the "July 2015 EEO Claim"), alleging reprisal discrimination for her placement on limited duty and the confiscation of her badge, credentials, and firearm. *Id.* ¶ 28. The Agency accepted the claim for investigation. *Id.* ¶ 29 (citing ECF No. 23-7 at 48-49 (August 2015 EEO Letter)). Ms. Wright's union representative also initiated a "Step One Grievance" pursuant to the collective bargaining agreement. *Id.* at 38.

Meanwhile, the EEO Office completed its investigation into the Consolidated 2014 EEO Claim and issued its report on January 30, 2015. ECF No. 23-6 at 24-26. On February 2, 2015, Ms. Wright sought a hearing before an EEOC Administrative Judge for the Consolidated 2014 EEO Claim. *Id.* at 29.

Similarly, Ms. Wright requested a hearing when the EEO Office completed its investigations of the December 2014 EEO Claim and the July 2015 EEO Claim. SOMF, ECF No. 45-1 ¶¶ 27, 30. But before an Administrative Judge conducted either of those hearings, Ms. Wright filed this action, and the EEO Office dismissed her hearing requests. *Id.*

**B. Procedural**

On June 28, 2018, Defendant filed its Motion to Dismiss or, in the Alternative, for Summary Judgment. *See* Def.'s Mot. Dismiss or, in Alternative, Summ. J., ECF No. 23. Ms. Wright filed her brief in opposition to Defendant's Motion on August

10, 2018. *See* Pl.'s Opp'n Def.'s Mot. Dismiss, or, in Alternative, Summ. J., ECF No. 27. In that brief, she requested discovery pursuant to Rule 56(d). *See id.* at 41-42. Defendant filed its reply brief on February 7, 2019. *See* Def.'s Reply in Supp. of Mot. J. Pleadings or, in Alternative, Summ. J., ECF No. 45.

The Court referred the case to a magistrate judge for full case management, and the case was randomly assigned to Magistrate Judge Harvey. *See* Docket for Civ. Action No. 17-1081. On June 8, 2020, Magistrate Judge Harvey issued his R. & R. recommending that the Court grant in part and deny in part Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, *see* R. & R., ECF No. 47 at 1; and that the Court deny Ms. Wright's Rule 56(d) discovery request as moot, *see id.* at 2.

On August 21, 2020, Ms. Wright filed her objections to Magistrate Judge Harvey's R. & R. *See* Pl.'s Objs., ECF No. 52. Defendant filed a response on September 18, 2020. *See* Def.'s Resp. Pl.'s Objs. Magistrate's R. & R. ("Def.'s Opp'n"), ECF No. 54. The motions are now ripe and ready for adjudication.

## III. Legal Standard

### A. Objections to a Magistrate Judge's Report and Recommendation

Pursuant to Federal Rule of Civil Procedure 72(b), a party may file specific written objections once a magistrate judge has entered a recommended disposition. Fed. R. Civ. P. 72(b)(1)-(2). A district court "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). A district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R. & R.] only for clear error." *Houlahan v. Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (citation and internal quotation marks omitted). "Under the clearly erroneous standard, the magistrate judge's decision is entitled to great deference" and "is clearly erroneous only if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed." *Buie v. Dist. of Columbia*, No. CV 16-1920 (CKK), 2019 WL 4345712, at *3 (D.D.C. Sept. 12,

2019) (internal quotation marks omitted) (quoting *Graham v. Mukasey*, 608 F. Supp. 2d 50, 52 (D.D.C. 2009)).

Objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection." LCvR 72.3(b). "[O]bjections which merely rehash an argument presented and considered by the magistrate judge are not 'properly objected to' and are therefore not entitled to de novo review." *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013) (quoting *Morgan v. Astrue*, No. 08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)). The Court reviews Ms. Wright's objections de novo.

**B. Rule 56 Motion for Summary Judgment[5]**

Federal Rule of Civil Procedure 56 provides that summary
judgment motions must be granted if "there is no genuine dispute
as to any material fact and the movant is entitled to judgment
as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party
bears the initial burden "of informing the district court of the
basis for its motion, and identifying those portions of 'the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,' which
it believes demonstrate the absence of a genuine issue of
material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

---

[5] Magistrate Judge Harvey noted that "Defendant's motion is
brought pursuant to Rule 12(b)(6), for failure to state a claim
upon which relief may be granted; Rule 12(c), for judgment on
the pleadings; and Rule 56, for summary judgment," R. &. R., ECF
No. 47 at 16 n.16 (citing ECF No. 23 at 1); but that the
Defendant did not identify which arguments should be addressed
under which rule, *id*. He noted that both Ms. Wright and the
Defendant had complied with Federal Rule of Civil Procedure 56
and with the local rules of the court and that Ms. Wright
responded to the motion as if it were one for summary judgment
by, among other things, responding to the Defendant's statement
of facts. *See* ECF No. 26. Accordingly, Magistrate Judge Harvey
evaluated the motion as one for summary judgment. Neither party
objected to Magistrate Judge Harvey's approach. *See generally*
Pl.'s Objs., ECF No. 52; Def.'s Opp'n, ECF No. 54. Accordingly,
this Court will treat the motion as one for summary judgment.*Cf.
Panarello v. Zinke*, 254 F. Supp. 3d 85, 96 n.3 (D.D.C. 2017)
(treating the defendant's combined motion to dismiss and motion
for summary judgment as a motion for summary judgment "to the
extent necessary"), *aff'd sub nom. Panarello v. Bernhardt*, 788
F. App'x 18 (D.C. Cir. 2019).

(1986); *see also* Fed. R. Civ. P. 56(c)(1). This burden "may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

A party opposing a summary judgment motion must show that a genuine factual issue exists by "(A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). Any factual assertions in the moving party's affidavits will be accepted as true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992). However, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

**C. Rule 56(d) Motion for Discovery**

Under Federal Rule of Civil Procedure 56(d), a non-moving party may ask the court to stay the consideration of summary judgment. *See* Fed. R. Civ. P. 56(d). A court may defer considering a motion for summary judgment, deny the motion, or allow time for the non-movant to take discovery if that party

15

"shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Id.* The criteria of a Rule 56(d) declaration are that:

> (1) It must outline the particular facts the non-movant intends to discover and describe why those facts are necessary to the litigation, (2) it must explain why the non-movant could not produce the facts in opposition to the motion for summary judgment; and (3) it must show the information is in fact discoverable.

*U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26–27 (D.C. Cir. 2014) (citing *Convertino v. DOJ*, 684 F.3d 93, 99-100 (D.C. Cir. 2012)). A Rule 56(d) motion for discovery "should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Convertino*, 684 F.3d at 99.

## IV.  Analysis

### A. Magistrate Judge Harvey Correctly Granted Summary Judgment on Ms. Wright's Retaliation Claims

Title VII makes it unlawful for an employer to retaliate against an employee because the employee engaged in protected activity and asserted her Title VII rights. *See* 42 U.S.C. § 2000e-3(a); *Jeffries v. Barr*, 965 F.3d 843, 860 (D.C. Cir. 2020). Where, as here, the plaintiff has no direct evidence of retaliation, she must proceed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Iyoha v. Architect of the Capitol*, 927 F.3d 561,

16

574 (D.C. Cir. 2019). This framework requires that the plaintiff first plead her *prima facie* case. *See McDonnell Douglas*, 411 U.S. at 802. In other words, she must establish: "'(1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the two.'" *Iyoha*, 927 F.3d at 574 (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). If the employee makes out a *prima facie* case, then the burden shifts to the employer to "'articulate some legitimate, nondiscriminatory reason' for its action." *Jeffries*, 965 F.3d at 859 (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53 (1981)). If the employer carries its burden, "the burden-shifting framework disappears," and the Court considers "whether a reasonable jury could infer retaliation from all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence of retaliation." *Jones*, 557 F.3d at 677 (alterations, citation, and internal quotation marks omitted).

As relevant here, "only a retaliatory act that is 'materially adverse' to the plaintiff is actionable." *Chambers v. Dist. of Columbia*, 35 F.4th 870, 876 (D.C. Cir. 2022) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)), *judgment entered*, No. 19-7098, 2022 WL 2255692 (D.C.

Cir. June 23, 2022). Courts determine whether an action is materially adverse using an objective standard, *see id.*; that is, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination," *White*, 548 U.S. at 57. Materially adverse actions are thus "objectively tangible harm[s]," *Forkkio v. Powell,* 306 F.3d 1127, 1131 (D.C. Cir. 2002); and not "those petty slights or minor annoyances that often take place at work and that all employees experience," *White*, 548 U.S. at 58.

Magistrate Judge Harvey recommended that the Court dismiss two of Ms. Wright's retaliation claims: (1) her referral to the EAP and (2) her assignment to two supervisors. *See* R. & R., ECF No. 47 at 58, 61. Specifically, Magistrate Judge Harvey concluded that Ms. Wright failed to establish that these incidents constitute materially adverse employment actions. *See id.*

Ms. Wright objects to this portion of the R. & R. *See* Pl.'s Objs., ECF No. 52 at 1-3. For the reasons below, the Court agrees with Magistrate Judge Harvey's recommendation as to each retaliation claim.

### 1. **Ms. Wright's Referral to the EAP Was Not Materially Adverse**

Ms. Wright objects to Magistrate Judge Harvey's conclusion that referral to an EAP is not an adverse employment action "as a matter of law." *Id.* at 1. She asserts that the Court should "allow the claim based on the record adduced so far and further allow the matter to be explored in discovery." *Id.* The Court rejects Ms. Wright's characterization of the R. & R. At no point does Magistrate Judge Harvey conclude that an EAP referral is not an adverse employment action as a matter of law. *See generally* R. & R., ECF No. 47 at 58-61. Rather, Magistrate Judge Harvey considered the uncontested facts, canvassed the caselaw concerning EAP referrals in the context of retaliation claims, and determined that "where, as here, a plaintiff fails to identify 'any consequences whatsoever' from an EAP referral, . . . the referral does not constitute an adverse employment action." *Id.* at 60 (quoting *Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 103 (D.D.C. 2011)). In other words, the factual record does not support Ms. Wright's *prima facie* case. *See Iyoha*, 927 F.3d at 574.

In her briefing, Ms. Wright offers three reasons why the Court should reject the R. & R. *See* Pl.'s Objs., ECF No. 52 at 2. First, she contends that the EAP referral was an adverse action because it "occurred at the same time as the other

retaliatory acts that have survived." *Id.* Defendant rejects
"[t]his excessively broad interpretation of the meaning of
'adverse action'" as "not supported by the law." Def.'s Opp'n,
ECF No. 54 at 2. Indeed, Ms. Wright cites no caselaw to support
her position that contemporaneous acts need not be independently
materially adverse acts. *See generally* Pl.s' Objs., ECF No. 52
at 2.

The Court agrees with Defendant that Ms. Wright's temporal
proximity argument does not provide a basis to reject the R. &
R. *See* Def.'s Opp'n, ECF No. 54 at 2. In both her April 2014
Claim[6] and her federal Complaint, Ms. Wright alleged that the
EAP referral was a discrete act of retaliation. *See* ECF No. 23-4
at 52 (April 2014 EEO Claim); *id.* at 54 (Agency's framing of
April 2014 EEO Claim); Compl., ECF No. 1 ¶¶ 24-26, 53-56.
Therefore, her "retaliation claim may proceed only under the
theory that [she] experienced a discrete, materially adverse
retaliatory action." *Ali v. D.C. Gov't*, 810 F. Supp. 2d 78, 90
n.16 (D.D.C. 2011) (citing *Nurriddin v. Bolden*, 674 F. Supp. 2d

---

[6] As Magistrate Judge Harvey explained in his R. & R., "[t]he
Agency's June 2014 EEO Letter framing the issues from the April
2014 EEO Claim for investigation . . . identifies only two
discrete acts occurring on two specific dates—Plaintiff's
referral to the EAP on April 8, 2014, and her assignment to the
evening shift on April 4, 2014—as the basis for Plaintiff's
charge of discrimination. . . . Plaintiff has pointed to no
evidence that she objected to the Agency's framing of her
claim." R. & R., ECF No. 47 at 43 (citing, among other cases,
*Beaver v. McHugh*, 840 F. Supp. 2d 161, 170 (D.D.C. 2012)).

64, 94 (D.D.C. 2009)). Ms. Wright must establish that the EAP referral was materially adverse and cannot bootstrap this claim into a new theory of retaliation at this stage in the proceedings. *See Dist. of Columbia v. Barrie*, 741 F. Supp. 2d 250, 263 (D.D.C. 2010) ("It is well established that a party may not amend its complaint or broaden its claims through summary judgment briefing.").

Second, Ms. Wright argues that her referral to the EAP was materially adverse because she has shown that Defendant's claim that "the EAP referral was 'voluntary,' not mandatory, was plainly wrong." Pl.'s Objs., ECF No. 52 at 2. As Defendant points out, *see* Def.'s Opp'n, ECF No. 54 at 2-3; this argument ignores that Magistrate Judge Harvey determined that generally "even a mandatory referral to an EAP is not an adverse employment action," R. & R., ECF No. 47 at 60 (collecting cases). The Court agrees with this analysis. "[T]he weight of authority indicates that referral to an EAP does not constitute an adverse employment action under Title VII." *Ndzerre v. Wash. Metro. Area Transit Auth.*, 275 F. Supp. 3d 159, 166 (D.D.C. 2017). The caselaw does not turn on whether participation in the EAP is voluntary or mandatory. *See, e.g.*, *Pope v. W. Tidewater Cmty. Servs. Bd.*, No. 2:21-CV-449, 2022 WL 3162193, at *13-14 (E.D. Va. Aug. 8, 2022); *King v. Fulton Cnty.*, No. 1:08-CV-03729TWTGGB, 2010 WL 2978072, at *7 (N.D. Ga. June 28, 2010),

*report and recommendation adopted*, No. 1:08-CV-3729-TWT, 2010 WL 2977968 (N.D. Ga. July 23, 2010); *Robinson v. Fulton Cnty.*, No. CIVA 105CV-2250-RWS, 2008 WL 78711, at *13 (N.D. Ga. Jan. 4, 2008); *Pierce-Daniels v. Potter*, No. 01 C 3789, 2003 WL 22532821, at *14 (N.D. Ill. Nov. 7, 2003). Rather, it turns on whether other adverse consequences accompany the EAP referral. *See, e.g.*, *Mitchell v. GE Healthcare*, No. 04-CV-353, 2007 WL 601759, at *15 (E.D. Wis. Feb. 23, 2007) ("[R]eferral to the Employee Assistance Program with the mandatory leave of absence may qualify as an adverse employment action."). Even a mandatory EAP referral, without more, is simply a "minor annoyance[]." *White*, 548 U.S. at 68. Here, Ms. Wright does not allege that she suffered any other consequences when she was referred to the Marshals Service's EAP. *See generally* Pl.'s Objs., ECF No. 52. The Court therefore determines that the undisputed facts support Magistrate Judge Harvey's conclusion that the EAP referral was not materially adverse.

Third, Ms. Wright claims that the EAP referral was materially adverse because "[D]efendant was acutely aware of [her] concerns about the retaliatory environment" at the time of the referral. Pl.'s Objs., ECF No. 52 at 2. She cites testimony from Chief Deputy Allen-Brown acknowledging that she "was referred to the EAP because [she] was 'very stressed out'" due to her transfer to D.C. Superior Court "because people there

'did not like her,' she had 'family issues,' and the transfer back was 'not in compliance with [an] alleged agreement that she had previously entered with Headquarters senior management and the Office of General Counsel.'" *Id.* (quoting R. & R., ECF No. 47 at 6-7 (quoting ECF No. 23-5 at 10)). Defendant offers no response to this argument. *See generally* Def.'s Opp'n, ECF No. 54 at 2-3. Still, the Court finds no error in the R. & R as Ms. Wright cites no caselaw to support her argument, nor does she distinguish the cases upon which the Magistrate Judge Harvey relied to conclude that the EAP referral was not materially adverse.

Finally, Ms. Wright states that the Court should reject Magistrate Judge Harvey's recommendation because "[i]t is subjectively and objectively reasonable [under the circumstances] to interpret a mandatory referral to this type of program as retaliation for being a complaining victim." Pl.'s Objs., ECF No. 52 at 2. She cites no legal authority for this proposition. *See id.* As the Court explained *supra*, referral to an EAP without additional consequences, as here, is not an objectively and materially adverse action. *See* R. & R., ECF No. 47 at 58-61 (collecting cases).

Accordingly, the Court agrees with Magistrate Judge Harvey that Ms. Wright's referral to the EAP was not a materially adverse action; **ADOPTS** that portion of the R. & R., *see* ECF No.

47; and **GRANTS** Defendant's Motion for Summary Judgment on the issue, *see* ECF No. 23.

### 2. Ms. Wright's Assignment to Two Supervisors Was Not Materially Adverse

Ms. Wright also objects to Magistrate Judge Harvey's conclusion that her assignment to two supervisors was not materially adverse. *See* Pl.'s Objs., ECF No. 52 at 2-3. She argues that the R. & R. "disregards" the record evidence that she felt "it was embarrassing, humiliating[,] and stressful"; and she "felt singled out [that she] had to answer to two supervisors via one would approve something and the other would disapprove it." *Id.* (quoting ECF No. 23-6 at 9). She also explains that this assignment "was unprecedented for someone of plaintiff's rank" and discusses the identity of her two supervisors as evidence that the action was adverse. *Id.* Defendant, citing persuasive authority, asserts that this evidence is not sufficient to establish that the assignment was materially adverse. *See* Def.'s Opp'n, ECF No. 54 at 4-5 (citing *Casey v. Mabus*, 878 F. Supp. 2d 175, 186 (D.D.C. 2012); *Booth v. Dist. of Columbia*, 701 F. Supp. 2d 73, 80 (D.D.C. 2010)).

The Court is unpersuaded by Ms. Wright's arguments. First, feelings of embarrassment and of being singled out do not make an action materially adverse. The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has made clear

24

that "'purely subjective injuries,' such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006); *see also Casey*, 878 F. Supp. 2d at 186 ("[E]nduring 'public humiliation' or 'loss of reputation' in the workplace—though unfortunate—cannot form the basis of a Title VII claim.").

Second, increased supervision is not a materially adverse employment action. *See Halcomb v. Off. of Senate Sergeant-at-Arms of U.S. Senate*, 563 F. Supp. 2d 228, 241-42 (D.D.C. 2008) (collecting cases), *aff'd sub nom. Halcomb v. Off. of Senate Sergeant-at-Arms*, 368 F. App'x 150 (D.C. Cir. 2010). Courts are "near unanimous in concluding that close scrutiny, monitoring, or tracking . . . simply does not rise to the level of a materially adverse retaliatory action sufficient to survive a motion to dismiss." *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 132-33 (D.D.C. 2016) (collecting cases). Moreover, the possibility of being subjected to "conflicting directives . . . constitutes a 'minor annoyance' that many employees have endured in the workplace." *Clarkson v. SEPTA*, 700 F. App'x 111, 115 (3d Cir. 2017).

Third, Ms. Wright's reference to the identity of her two supervisors—both of whom were subjects in her June 2012 EEO claim—does not alter the Court's analysis here. In his R. & R.,

Magistrate Judge Harvey considered three separate events that Ms. Wright alleged were retaliatory:

> 1. In April 2014, upon her return to D.C. Superior Court, [Ms. Wright] was assigned two supervisors (Event 17);
> 2. In April 2014, Deputy Chief Allen-Brown assigned Supervisory Officer Clark as [Ms. Wright]'s direct supervisor (Event 18); and
> 3. In April 2014, Deputy Chief Allen-Brown assigned Supervisory Deputy Waters as one of [Ms. Wright]'s supervisors (Event 20).

R. & R., ECF No. 47 at 54. Magistrate Judge Harvey then examined each of these events and concluded that Ms. Wright's assignment to Supervisory Officer Clark and her assignment to Supervisory Deputy Waters were both materially adverse. *See id.* at 56-57. By contrast, Magistrate Judge Harvey determined that the fact that Ms. Wright was assigned to two supervisors, regardless of their identity, was not similarly materially adverse.

The Court therefore concludes that Ms. Wright's assignment to two supervisors was not a materially adverse action; **ADOPTS** that portion of the R. & R., *see* ECF No. 47; and **GRANTS** Defendant's Motion for Summary Judgment on the issue, *see* ECF No. 23.

### B. Magistrate Judge Harvey Correctly Determined that the Gender Discrimination and Retaliation Claims Ms. Wright Raised in Paragraphs 5-13 of the Complaint Were Untimely or Not Exhausted

A plaintiff must first timely exhaust her administrative remedies with the relevant administrative agency before bringing

her claims to federal court. *Smith v. Lynch*, 106 F. Supp. 3d 20, 41 (D.D.C. 2015) (citing *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010)). Title VII requires "'[a]n aggrieved person [to] initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory.'" *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 10–11 (D.D.C. 2019) (quoting 29 C.F.R. § 1614.105(a)(1)). If the parties are unable to resolve the matter informally, the employee may file a formal complaint "with the agency that allegedly discriminated against the complainant." 29 C.F.R. § 1614.106(a); *Briscoe v. Kerry*, 111 F. Supp. 3d 46, 53 (D.D.C. 2015) (quoting 29 C.F.R. §§ 1614.105(d), 1614.106(a)). The employee must file a formal complaint to exhaust her administrative remedies. *See Blue v. Jackson*, 860 F. Supp. 2d 67, 73 (D.D.C. 2012) (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1350 (D.C. Cir. 2012)). She then "may file a civil action after the agency issues an adverse final decision or 180 days elapse without a decision, whichever happens first." *Id.* (citing 42 U.S.C. § 2000e-16(c)). If the agency issues a final decision, the employee may file a civil action but must do so within 90 days. *See Smith*, 106 F. Supp. 3d at 42 (citing 42 U.S.C. § 2000e-16(c)).

The exhaustion doctrine also limits the scope of a plaintiff's civil action based on what she alleged in her administrative claim. *See Williams v. Spencer*, 883 F. Supp. 2d

27

165, 173 (D.D.C. 2012). Specifically, "[t]he theories of discrimination in [a] plaintiff's lawsuit are limited to the theories contained in the [administrative EEO complaint] [s]he filed." *Ponce v. Billington*, 652 F. Supp. 2d 71, 74 (D.D.C. 2009) (first and second alterations in original) (quoting *Marcelus*, 540 F. Supp. 2d at 236). That is, her "claims 'must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Buitrago v. Dist. of Columbia*, No. 18-CV-261(EGS), 2020 WL 1033343, at *5 (D.D.C. Mar. 3, 2020) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). "'[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" *Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (quoting *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989)).

Ms. Wright objects that Magistrate Judge Harvey misconstrued her gender discrimination and retaliation claims and therefore improperly dismissed them. *See* Pl.'s Objs., ECF No. 52 at 3-4. She asserts that Magistrate Judge Harvey "relied on the defendant's unilateral and crimped characterization of" paragraphs 5-13 of the Complaint as "discrete acts," thereby

28

"miss[ing] the fact that the allegations giving rise to those claims show a[] pattern of discrimination that continued throughout plaintiff's tenure—including the period post-dating the filing of her EEOC claim in 2012." *Id.*

The Court agrees with Defendant that Magistrate Judge Harvey correctly "conducted his own analysis of the record, including the EEO administrative documents, to determine the scope and content of the claims." Def.'s Opp'n, ECF No. 54 at 5. Ms. Wright alleges the following in the relevant paragraphs of the Complaint:

> 5. "[I]n August 2010 and continuing, [Supervisory Officer] Clark, subjected her to vulgar and sexually explicit language concerning Mr. Clark's sexual desires for Ms. Wright; unwarranted sexual advances; and unwanted sexually-oriented touching";
> 6. "In August 2010, [Supervisory Officer] Clark asked Ms. Wright to come to his room to study and to have dinner with him";
> 7. "Since 2010 and continuing, Mr. Clark asked Ms. Wright for sexual favors, visited Ms. Wright's work post unnecessarily, and physically brushed up against Ms. Wright";
> 8. "Since 2010 and continuing, [Supervisory Officer] Clark threatened to change Ms. Wright's work hours if she did not give in to his sexual advances";
> 9. "Since 2010 and continuing, [Supervisory Officer] Clark commented to Agency management that Ms. Wright is not capable of performing her job, is frequently off work due to injury and should therefore be given secretarial duties";
> 11.  "On June 13, 2012, [Supervisory Officer] Clark attempted to have Ms. Wright placed on leave restriction by the Assistant Chief Deputy";

12. "On June 13, 2012 and continuing, Agency managers continually changed Ms. Wright's work assignments; told other USMS employees about Ms. Wright's performance evaluation rating; questioned USMS employees concerning Ms. Wright's whereabouts and lunch breaks; discussed Ms. Wright's leave, worker's compensation injury and other personal business to or in front of other USMS employees; requested specific information concerning Ms. Wright's doctor appointments; and ordered Ms. Wright to be relieved from her post and enter the cellblock for a meeting although she was on light duty and had been instructed not to enter the cellblock for safety reasons";

13. "On November 8, 2012, Ms. Wright was informed that her work hours were changed. Ms. Wright was then informed on November 21, 2012 by the supervisory deputy that she was to report her arrival time, breaks, when she departed for and returned from the bathroom, as well as when she left for the day."

Compl., ECF No. 1 ¶¶ 5-9, 11-13. Ms. Wright raised gender discrimination and retaliation claims with respect to all of these allegations. *See id.* ¶¶ 46-58.

To survive Defendant's Motion, Ms. Wright needed to raise the allegations in paragraphs 5-13 of the Complaint in an EEO claim. *See Buitrago*, 2020 WL 1033343, at *5. The Court finds that she made all but one of these allegations in her June 2012 EEO Claim. *See* ECF No. 23-4 at 4-5 (September 2012 EEO Letter), 9-10 (2012 EEO Claim Investigation Report), 17-36 (May 2015 Decision). Nevertheless, the Court concludes that Ms. Wright's gender discrimination and retaliation claims are untimely or not

exhausted and that the legal theory she advances in her briefing does not change this conclusion.

First, Ms. Wright's gender discrimination claim is untimely. Ms. Wright alleged gender discrimination with respect to the allegations in paragraphs 5 and 7-11 in her June 2012 EEO Claim. *See* ECF No. 23-4 at 4-5 (September 2012 EEO Letter), 9-10 (2012 EEO Claim Investigation Report), 17-36 (May 2015 Decision). The administrative documents never discuss these allegations as part of a "pattern" of allegedly discriminatory acts. *See id.* At each stage, these allegations are described as discrete discriminatory acts. *See id.* But even if Ms. Wright had alleged a pattern of discrimination in the administrative proceedings, the Agency would not have had notice that the pattern continued after she filed her 2012 EEO Claim because she did not allege any gender-based claims in her January 2013 amendment or in any of her later EEO claims. *See generally* ECF No. 23-4. This pleading failure is fatal to Ms. Wright's objection because the allegations in the June 2012 EEO Claim are untimely. That is because Ms. Wright filed the Complaint after the statutory deadline for doing so. *See* 42 U.S.C. § 2000e-16(c) (complainant must file a civil action within 90 days of receiving a final administrative decision); ECF No. 23-4 at 17-36 (May 11, 2015 Decision); Compl., ECF No. 1 (filed June 6, 2017). Ms. Wright offers no reason why this analysis and

conclusion are incorrect, and the Court sees none. Because the allegations in paragraphs 5 and 7-11 are untimely, Ms. Wright's objection cannot resuscitate her gender discrimination claim.

Second, Ms. Wright's gender-based retaliation claim is untimely. Ms. Wright alleged gender-based retaliation with respect to the allegations in paragraphs 12 and 13 in her June 2012 EEO Claim. *See* ECF No. 23-4 at 5 (September 2012 EEO Letter), 10 (2012 EEO Claim Investigation Report), 17-36 (May 2015 Decision). Those allegations are untimely because Ms. Wright filed the Complaint on June 6, 2017—more than two years after the Agency issued its final decision and well past the 90-day deadline for filing a civil action. *See* 42 U.S.C. § 2000e-16(c) (complainant must file a civil action within 90 days of receiving a final administrative decision); ECF No. 23-4 at 17-36 (May 11, 2015 Decision); Compl., ECF No. 1 (filed June 6, 2017). Ms. Wright's argument that she alleged a "pattern" of retaliatory acts does not save her claim. The record does not show that she ever raised this theory; rather, her allegations of retaliation are described as discrete retaliatory acts. *See generally* ECF No. 23-4. Moreover, because Ms. Wright did not allege any gender-based claims in any of her later EEO claims, *see id.;* the Agency did not have notice of any retaliation continuing beyond November 2012, *see Buitrago*, 2020 WL 1033343,

at *5. Ms. Wright's objection as to paragraphs 12 and 13 is therefore unsuccessful.

Third, Ms. Wright's allegation in paragraph 6 of the Complaint was not exhausted. Ms. Wright did not raise this allegation at any point in any of her EEO claims. *See generally* ECF No. 23-4. In fact, the administrative record suggests that she only made this allegation at the February 25, 2015 hearing before the EEOC Administrative Judge. *See* ECF No. 23-4 at 20 ("In her affidavit as well as her earlier submissions for the case, [Ms. Wright] never mentioned any dinner with [Supervisory Officer] Clark or studying with him."). Contrary to Ms. Wright's arguments, *see* Pl.'s Objs., ECF No. 52 at 3-4; this did not give the Agency sufficient notice because the Agency had no "opportunity to fully investigate and resolve [her] claim," *Vance v. O'Rourke*, No. 18-cv-00577, 2019 WL 914010, at *6 (D.D.C. Feb. 22, 2019). This allegation has not been exhausted. *Cf. Blue*, 860 F. Supp. 2d at 73; *Beaver*, 840 F. Supp. 2d at 170 ("[T]he complainant has failed to exhaust his or her administrative remedies with respect to claims not approved by the EEO.").

Accordingly, the Court concludes that Ms. Wright's gender-based discrimination and retaliation claims are untimely as to paragraphs 5 and 7-13 of the Complaint and unexhausted as to paragraph 6; **ADOPTS** that portion of the R. & R., *see* ECF No. 47;

and **GRANTS** Defendant's Motion for Summary Judgment on the issue, *see* ECF No. 23.

### C. Magistrate Judge Harvey Correctly Concluded That Ms. Wright's Hostile Work Environment Claims Are Untimely

Finally, Ms. Wright objects to Magistrate Judge Harvey's recommendation that the Court dismiss her hostile work environment claims as untimely on the ground that the R. & R. "misapprehends the nature of [her] hostile work environment claims and the case law speaking to them." *See* Pl.'s Objs., ECF No. 52 at 4. She first argues that Magistrate Judge Harvey should have "examine[d] all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive ---." *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). This argument misconstrues *Morgan* and the related caselaw. A court must "examine all of the circumstances" to determine "whether an environment is 'hostile.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). This test is not relevant to the court's timeliness analysis. *See Morgan*, 536 U.S. at 116-17. Instead, a hostile work environment claim is timely so long as "an act contributing to the claim occurs within the filing period," *id.* at 117; and "the employee exhaust[s] administrative remedies with respect to at least one

34

act occurring within the [relevant] time period," *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 176 (D.D.C. 2016).

Ms. Wright next argues that Magistrate Judge Harvey should have applied the "like or related to" test. *See* Pl.'s Objs., ECF No. 52 at 4.[7] This test allows employees to sue for claims that are "'like or reasonably related to the allegations of the administrative charge . . . , notwithstanding the failure to otherwise exhaust administrative remedies.'" *Howard v. Kerry*, 85 F. Supp. 3d 428, 435 (D.D.C. 2015) (quoting *Bell v. Donley*, 724 F. Supp. 2d 1, 8 (D.D.C. 2010)).[8] An unfiled claim is "like or reasonably related to" a previously filed claim "if it 'could have reasonably been expected to grow out of the original complaint.'" *Bell*, 724 F. Supp. 2d at 8-9 (quoting *Weber v. Battista*, 494 F.3d 179, 183 (D.C. Cir. 2007)). Claims "are not

---

[7] Since Magistrate Judge Harvey considered whether Ms. Wright's untimely retaliation claims could be considered as part of a retaliatory hostile work environment claim, *see* R. & R., ECF No. 47 at 45-52; the Court determines that Ms. Wright's objection applies only to the analysis of her gender-based hostile work environment claim.

[8] Although courts in the district are split as to whether this test applies to discrete acts of discrimination and retaliation, *see Hicklin v. McDonald*, 110 F. Supp. 3d 16, 19-20 (citing *Morgan*, 536 U.S. at 114); "it is settled that [hostile work environment] claims 'like or reasonably related to the allegations of the administrative charge may be pursued . . . , notwithstanding the failure to otherwise exhaust administrative remedies," *Bell*, 724 F. Supp. 2d at 8 (alteration, citation, and internal quotation marks omitted); *see also Morgan*, 536 U.S. at 115 ("Hostile environment claims are different in kind from discrete acts.").

'related' simply because they arise out of the same incident."
*Id.* at 9. Rather, qualifying claims "must arise from the
administrative investigation that can reasonably be expected to
follow the charge of discrimination." *Park*, 71 F.3d at 907
(citation and internal quotation marks omitted). This "serves
the important purpose of giving the charged party notice of the
claim and 'narrow[ing] the issue for prompt adjudication and
decision.'" *Id.* (quoting *Laffey v. Nw. Airlines, Inc.*, 567 F.2d
429, 472 n.325 (D.C. Cir. 1976)).

The Court agrees with Magistrate Judge Harvey's assessment
that Ms. Wright has not exhausted her gender-based hostile work
environment claim. *See* R. & R., ECF No. 47 at 42. Ms. Wright
alleged discrimination on the basis of gender in her June 2012
EEO Claim. *See* ECF No. 23-4 at 2 (June 2012 EEO Claim). She did
not indicate that she was complaining about gender-based
discrimination in any other EEO claim. *See Williams*, 883 F.
Supp. 2d at 174 ("The EEOC charge form makes it easy for an
employee to identify the nature of the alleged wrongdoing by
simply checking the labeled boxes that are provided. When an
employee is uncertain which type of discrimination has occurred,
she need only describe it in the text of the charge form."
(citation and internal quotation marks omitted)). A plaintiff
may not "pursue new categories of discrimination or retaliation
in litigation based on a different type of discrimination [than

36

she] raised before the agency." *Bell*, 724 F. Supp. 2d at 9. As a result, Ms. Wright's decision to plead gender-based discrimination in her June 2012 EEO Claim and not in any subsequent EEO claim means that the allegations in the June 2012 EEO Claim are the only claims that could be construed as a gender-based hostile work environment charge. There are no other claims that are "like or reasonably related to" those allegations. *See, e.g.*, *Howard*, 85 F. Supp. 3d at 435–36 (dismissing plaintiff's gender-based hostile work environment claim because her EEO complaint did not allege gender-based discrimination). The Court therefore concludes that Ms. Wright's gender-based hostile work environment claim is untimely as to the allegations in the June 2012 EEO Claim and unexhausted as to any other allegations.

Accordingly, the Court **ADOPTS** this portion of the R. & R., *see* ECF No. 47; and **GRANTS** Defendant's Motion for Summary Judgment on Ms. Wright's hostile work environment claims, *see* ECF No. 23.

## V.  Conclusion

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Harvey's R. & R., *see* ECF No. 47; **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, *see* ECF No. 23; and **DENIES**

Plaintiff's request for discovery pursuant to Rule 56(d), *see*

ECF No. 27 at 41-42.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**


**Signed:      Emmet G. Sullivan**
**              United States District Judge**
**              December 12, 2022**